CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 11 2013
JULIA C. BURLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LLOYD ELWOOD SOWERS, | ) | CASE NO. 4:12CV00029 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's November 10, 2008 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

In a decision dated January 28, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since August 2, 2008, his alleged

---

[1] As the defendant's brief points out, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

date of disability onset.[2] (R. 39.) The Law Judge determined plaintiff's left periscapular tendonitis and an ankle disorder, status post left ankle arthroscopy, were severe impairments.[3] (R. 39.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 40.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform the full range of sedentary work. (R. 40-44.)

The Law Judge relied on portions of the testimony of Andrew V. Beale, Ed.D., a vocational expert ("VE"), which were in response to questions premised on the Law Judge's RFC finding. (R. 44-45, 71-75.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform his past relevant work. (R. 44.) However, he determined that there were other jobs that existed in significant numbers in the local and national economy which plaintiff could perform: specifically, inspector, hand worker, and assembler. (R. 45.) Accordingly, the Law Judge found that plaintiff was not disabled. (R. 46.)

Plaintiff appealed the Law Judge's January 28, 2011 decision to the Appeals Council and submitted additional evidence. (R. 1-6, 398-399.) In its June 18, 2012 notice, the Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (2004). Substantial gainful activity is "work activity that involves doing significant physical or mental activities," and it is typically determined by the amount of a claimant's earnings. *See* 20 C.F.R. § 404.1574. In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, which is December 31, 2011. *See* 20 C.F.R. § 404.131(a); (R. 39, 146.)

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

decision as the final decision of the Commissioner. (R. 1-2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Commissioner's final decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In his brief in support of a motion for summary judgment, plaintiff challenges the Law Judge's decision on two fronts. (Dkt. No. 15, at 8-15.) First, plaintiff contends that the Law Judge did not properly credit the opinions of plaintiff's treating physicians, Mark Mahoney, D.O. and J. Randolph Clements, D.P.M. *Id.* at 8-11. Second, he argues that the Law Judge's analysis of the medical evidence and plaintiff's subjective complaints, as well as his determination of plaintiff's credibility, is not supported by substantial evidence. *Id.* at 11-15.

The undersigned first notes that what makes this a very close case is that the record clearly demonstrates that plaintiff is functionally limited. In September 2008, he sought treatment at Martinsville Urgent Care, complaining of pain in both of his ankles and his right knee. (R. 265.) Plaintiff related that he suffered a third degree sprain of his left ankle when he was a teenager and indicated that his work involved climbing ladders which irritated the condition. *Id.* On physical examination, plaintiff presented a normal gait and station, and the treatment provider was unable to reproduce any pain in his right knee. (R. 266.) However, the treatment provider did observe several limitations in plaintiff's lower extremities, including pain on internal rotation of both ankles. *Id.* X-rays of plaintiff's right knee and ankles were normal, though previous x-rays apparently revealed stress fractures in both legs and other questionable findings. (R. 266, 268-270.) Five days later, plaintiff sought treatment at the Fatade Health and Medical Center, complaining of hypertension. (R. 295-297.) Plaintiff did not complain of musculoskeletal pain, gait disturbance, or any other symptoms; had normal findings in all physical examination areas; and was diagnosed only with benign essential hypertension. *Id.*

On October 15, 2008, plaintiff returned to Fatade for follow-up and seeking treatment for osteoarthrosis. (R. 301.) Plaintiff complained of arthritis and multiple painful joints in his lumbar spine, knee, and the muscles of the anterior lower leg. *Id.* Physical findings revealed mild to moderate stiffness in the lumbar spine and foot bilaterally, but all other findings were normal. (R. 302.) Plaintiff was diagnosed with benign simple hypertension, hyperlipidemia, and a follow-up was scheduled to work on his blood pressure and osteoarthrosis. *Id.* On October 31, 2008, plaintiff sought treatment from Rodney A. Mortenson, M.D. (R. 280-281.) Plaintiff complained of a six month history of increasing pain in both knees and ankles, again pointing to his third degree sprain at age thirteen as the original cause of the instability, and that he had

4

numerous falls, difficulty going up stairs, and pain. (R. 280.) A physical examination revealed fairly good to normal range of motion in both knees and ankles, though with tenderness in the right knee and ankle. *Id.* X-rays generally were normal, though a "standing weight-bearing view" of plaintiff's right knee showed some slight narrowing in the lateral compartment, but it was otherwise normal. *Id.* However, a "varus stress view" of his right ankle revealed the ligaments to be "totally" and "extremely" unstable, and Dr. Mortenson opined that plaintiff definitely needed reconstruction of the lateral ankle ligaments. (R. 280-281.)

In November 2008, plaintiff complained of back pain, which AyoKunle Fatade, D.O. noted was a new complaint, but physical examination findings were normal. (R. 350.) In December, plaintiff continued to have mild back pain, reporting that his symptoms were worse, and a physical examination revealed mild to moderate spasm of the lumbar paravertebral muscles, though Dr. Fatade noted that plaintiff's overall condition was favorable. (R. 304-305.) X-rays taken in January 2009 revealed degenerative changes in plaintiff's back, including anterior osteophytes and mild posterior facet anthropathy, while plaintiff's left shoulder was found normal despite complaints of left shoulder pain. (R. 293-294, 308, 344.) Plaintiff also complained of moderate pain in his foot, but there were apparently normal findings on physical examination. (R. 307-309.) Dr. Fatade noted that plaintiff was seeking disability but stated that he had no obvious pathology. (R. 308.)

In March 2009, plaintiff again complained of moderate pain in his left shoulder and was found to have a reduced range of motion with pain, but his physical examination otherwise was normal, Dr. Fatade opining that plaintiff's overall condition was improving. (R. 310-311.) By June, plaintiff complained of moderate posterior left shoulder and left upper leg pain having lasted for about two and a half months, and he was diagnosed with lumbago and with unspecified

joint pain. (R. 315.) In September, plaintiff again sought treatment for hypertension, which was found stable with no other symptoms or findings. (R. 315, 353.)

There are no further records until February 2010. (R. 314, 353-354.) At that time, plaintiff claimed that his back pain was moderate, though severe at times, and was worsening and radiating into his legs. *Id.* Further, he complained that his arthritis was causing stiffness which improved with activity, and that he experienced a decreased range of motion. *Id.* Once again, Dr. Fatade's examination revealed mild-to-moderate pain of the lumbar spine but otherwise normal findings, and he noted that plaintiff's pain was "better" with medication. (R. 314, 353.) In March 2010, plaintiff sought treatment from Dr. Mahoney, and complained of chronic ankle pain and instability, along with hip and knee pain. (R. 328.) Dr. Mahoney's examination revealed that plaintiff had increased ligament stability in both ankles but with pain on range of motion, and he referred plaintiff to an orthopedist for a second opinion. *Id.*

In his first meeting with a podiatrist, R.J. Clements, DPM, plaintiff complained that he suffered about five ankle sprains per month and one severe sprain a year, all stemming from his severe injury as a teenager. (R. 374-375, 383-385.) Dr. Clements ordered an MRI of plaintiff's left ankle,[4] and opined that plaintiff suffered a small tear in the anterior talofibular ligament with lateral instability. (R. 374-375, 383-385.) As a result, plaintiff underwent left ankle arthroscopy and surgical repair of the ligament in May 2010. (R. 378-379, 383-385.) Ten days following surgery, plaintiff was found to be "doing fine" and "healing well." (R. 387.) He was ordered to

---

[4] The record is rather confusing on this point. On several occasions, plaintiff's treatment providers refer here to plaintiff's right ankle. (R. 383-384.) This point is made all the more difficult by the earlier report from October 2008 that plaintiff's left ankle was perfectly normal while his right ankle was exceptionally unstable and in need of surgery. (R. 280-281.) As plaintiff appears to have had an MRI and surgery performed on his left ankle, the undersigned will assume that at least some of the references to plaintiff's right ankle are in error. (R. 383-385, 387-388.) However, there is no debate that one of the two ankles was sufficiently unstable to require surgery.

keep his ankle elevated and avoid weight bearing of over 25-50% of his body weight. (R. 388.) In June, plaintiff again was found to be "doing fine" and conceded that his pain was much better in the previous week. (R. 393.) Plaintiff was instructed to continue weight bearing as tolerated while wearing a CAM boot and to start physical therapy to improve his range of motion. (R. 394.)

In July 2010, plaintiff reported to Dr. Clements that he was "doing ver (sic) well," with minimal pain. (R. 356.) He indicated that his ankle felt "a lot better" than it did prior to surgery, though he continued to use a lace-up ankle brace and a cane for support. *Id.* Other than slight edema in his left calf, plaintiff's physical examination was normal, with full range of motion in both lower extremities and no complaints of back pain. (R. 356-357.) Plaintiff was instructed to continue to use his left ankle brace for one year over uneven ground, discontinue his use of a cane, given a right ankle brace to increase stability on that side as well, and was told to follow up in six months if he had questions or problems. (R. 357.) Meeting with his primary care physician Dr. Mahoney, plaintiff also complained of muscle spasms in his back, ribs, and between his shoulders going on for two to three weeks and numbness and pain in his left shoulder for months. (R. 363-364.) Examination revealed rotator cuff weakness in his left shoulder, and plaintiff was given new pain medication samples for the pain, though no other findings were noted. (R. 364.)

In August 2010, plaintiff complained of a one year history of intermittent numbness in both hands and arms, usually occurring when he tried to sleep on his side, as well as left shoulder pain. (R. 360.) Plaintiff's physical examination findings generally were normal. *Id.* However, they did reveal some diffuse left periscapular tenderness, some subjective altered sensation in the median nerve distribution of both hands, and a left median nerve which was irritable to

percussion. *Id.* Plaintiff was diagnosed with possible bilateral carpel tunnel syndrome, left periscapular tendonitis, and possible cervical radiculitis; it was suggested that he try new medication and vitamins for arthritis, wean himself off narcotic medication, try night splints, and avoiding sleeping on his side. *Id.* Finally, in October and December, plaintiff complained of ankle pain, continued to wear braces on his ankles and use a cane, and had decreased ankle range of motion. (R. 367, 398-399.) However, plaintiff's treatment plan was not changed concerning those conditions. *Id.*

In his November 24, 2010, "Physical Capacities" assessment, Dr. Mahoney opined that plaintiff could stand/walk or sit for only thirty minutes each of an eight-hour workday. (R. 371.) He also indicated that plaintiff was limited to lifting or carrying a maximum of ten pounds, could not use his hands for pushing/pulling or repetitive motion, used braces on both his ankles, suffered pain which would interfere with his concentration and ability to focus on the task at hand, likely would miss days of work due to exacerbations of his symptoms, and would need opportunities to elevate his lower extremities and lie down during a normal workday. *Id.* In his December 10, 2010, "Physical Capacities" assessment, Dr. Clements opined that plaintiff could stand/walk for two hours and sit for four hours of a normal workday. (R. 397.) He also indicated that plaintiff could carry a maximum of ten pounds, could not use his hands for pushing/pulling and repetitive motion, used bilateral ankle braces, and would need opportunities to elevate his lower extremities during a normal workday. *Id.* However, Dr. Clements was not able to determine whether plaintiff's pain complaints were genuine. *Id.* Accordingly, he indicated that if plaintiff's subjective complaints were accurate, he would require opportunities to lie down during a normal workday, suffer frequent interruptions in concentration and focus as a result of pain, and might miss days of work due to exacerbations. *Id.*

The Law Judge declined to give much weight to either opinion. (R. 43-44.) He found that Dr. Mahoney's opinion failed to reveal the clinical abnormalities that caused the extreme limitations he described and that his findings were inconsistent with the medical evidence of record. (R. 43.) Moreover, he found that Dr. Clements' opinion appeared to rely heavily on crediting plaintiff's subjective complaints, and, in the Law Judge's view, these complaints were not entirely credible or consistent with the medical record. (R. 44.)

There is no debate that the Law Judge is tasked with making factual determinations and resolving conflicts in the record, including inconsistencies in the medical evidence. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Law Judge is in the best position to make these determinations, and they are to be affirmed if they are supported by substantial evidence. *Id.*; *See also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984). After thoroughly reviewing the record, the undersigned acknowledges that there are several notable inconsistencies both in and among plaintiff's testimony, the medical evidence, and the opinions of plaintiff's treatment providers.

First of all, plaintiff's testimony before the Law Judge was contradicted by evidence in the record. Plaintiff testified that he stopped working in 2005 (R. 55-56.), but there is evidence that he was working into 2008. In a September 2008 record from Martinsville Urgent Care, plaintiff indicated that he "does a lot of work on ladders," which he thought was irritating his ankle. (R. 265.) Also in September, plaintiff wrote on a registration form for the Fatade Health and Medical Center that he was self-employed as an insulation worker. (R. 333-334.) Moreover, plaintiff reported nearly $7,000 in earnings in 2006, though he reported no earnings thereafter. (R. 147.)

Plaintiff's account of his treatment also is contradicted by parts of the record. At the hearing, plaintiff testified that surgery on his ankle did not relieve his pain, even slightly, and that he continued to suffer from "real pain." (R. 59, 62.) Moreover, he also testified that he did not think he ever told Dr. Clements that he was feeling better following surgery. (R. 60.) In May 2010 follow-up appointment, he stated that he was "doing fine." (R. 387.) In June, plaintiff again told Dr. Clements that he was doing fine and that his pain was "much better in the last week." (R. 393.) A July 2010 treatment notes revealed that plaintiff offered he was doing very well with minimal pain and that his ankle "feels a lot better than it did before the surgery." (R. 356.) Furthermore, the physical examination findings were normal, with no complaints or signs of any other pain. (R. 356.) Finally, plaintiff testified that he had been prescribed the use of a cane after surgery was performed (R. 60-61.), but he failed to mention that Dr. Clements had ordered him to stop using a cane in July 2010. (R. 357.) Irrespective of whether these inconsistencies were unintentional or the result of a poor memory, they provide a substantial evidentiary basis for the Law Judge's decision not to fully credit plaintiff's complaints concerning the severity of his condition. (R. 42-44.); 20 C.F.R. § 404.1529(c)(4).

Inconsistencies also characterize the medical record. There is evidence in September and October 2008 of plaintiff suffering bilateral ankle pain and extreme instability in the ligaments of his right ankle requiring surgery. (R. 265-270, 280-281.) However, plaintiff's gait and station were normal, he maintained fairly good to full range of motion in his hips, knees, and ankles; and, with the exception of his right ankle, imaging evidence was generally normal. *Id.* Dr. Fatade's records note no significant limitations in plaintiff's use of his lower extremities from September 2008 through February 2010. (R. 295-315, 353-354.) Furthermore, Dr. Fatade indicated that plaintiff's overall condition was favorable and improving, that his pain was better

with medication, and that he displayed no obvious pathology. (R. 304-305, 308, 310-311.) Plaintiff did complain of ankle pain and instability starting in March 2010, but deficits were only observed in, and surgery performed on, plaintiff's left ankle, which had been found completely normal in October 2008. (R. 374-379, 387-389.) It is true that he continued to wear ankles braces and complained of decreased range of motion, pain in both ankles, and difficulty walking in October and December 2010. Yet, Dr. Clements's records also indicate that plaintiff's ankle pain and functioning improved greatly as a result of his May 2010 surgery, describing his pain as minimal and reporting a normal range of motion in both lower extremities. (R. 356, 387, 393.)

As for plaintiff's arm and shoulder impairments, there is little evidence to suggest that his conditions would substantially interfere with his ability to perform sedentary work.[5] There is imaging evidence of mild degenerative disc disease, but that imaging revealed that plaintiff's shoulder was normal. (R. 293-294.) Plaintiff has complained of joint pain and arthritis, but his pain generally was found to be mild or moderate without weakness and somewhat relieved by medication. (R. 304-305, 308, 310-311.) In August 2010, a physical examination revealed some diffused left periscapular tenderness and some subject altered sensation in the median nerve distribution of both hands and left median nerve irritability to percussion, leading plaintiff to be diagnosed with possible bilateral carpal tunnel syndrome, left periscapular tendonitis, and possible cervical radiculitis. (R. 360.) However, plaintiff's spine was not tender with normal movement, he had no shoulder joint tenderness with normal/painless range of motion, his Adson's tests were negative, and he had no thenar atrophy or weakness. *Id.* Though plaintiff was instructed to follow-up in four to six weeks if his condition failed to improve, there is no evidence that he later sought treatment or complained of upper extremity limitations, and

---

[5] It is true that a claimant generally must have good use of both hands and sets of fingers to be capable of performing unskilled sedentary work. SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).

examinations in October and December 2010 noted no abnormalities. (R. 360, 367-368, 398-399.) Moreover, plaintiff cited no limitations in his use of his hands before August 2010. (R. 166-173, 198-204.) While there is some evidence supporting plaintiff's claim concerning the existence and severity of his impairments, there also is substantial evidence supporting the Law Judge's resolution of the inconsistencies and conflicts in the evidence and his ultimate determinations regarding their severity and vocational effects.

Generally, evidence from treating physicians should be accorded controlling weight so long as it is supported by clinical evidence and consistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Here, as said, the medical evidence, as well as inconsistencies in plaintiff's own statements about the effects of his maladies, ultimately provides substantial evidence suggesting that plaintiff is not as limited as either he or his treatment providers opined. (R. 43-44, 371, 397.) While Dr. Mahoney was plaintiff's primary care provider and frequently examined him, he points to no evidence in support of his opinion and, as shown, there is little evidence suggesting that plaintiff is as severely limited as he opined. Dr. Clements certainly relied heavily on plaintiff's subjective complaints, but by the time he completed his December 2010 physical capacity assessment, he had not examined plaintiff since the previous July. Interestingly, he found that plaintiff's pain and functional abilities had substantially improved following surgery, and he readily admitted that he could not determine whether plaintiff's complaints of pain were genuine. (R. 397.) In the end, and while the undersigned may have given different weight to plaintiff's treating source evidence and to his subjective complaints, substantial evidence supports the Law Judge's resolution of the conflicts in the evidence and credibility determinations, and the adoption of his decision by the Commissioner.

For all these reasons, it is RECOMMENDED that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

Date: June 11, 2013