IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LLOYD E. SOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:12-cv-00029 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R & R") of Hon. B. Waugh Crigler, recommending that I grant Defendant's Motion for Summary Judgment [ECF No. 16], deny Plaintiff's Motion for Summary Judgment [ECF No. 14], and dismiss this case. Plaintiff filed timely Objections to the R & R [*see* ECF No. 19]; Defendant did not respond. Therefore, the Objections are ripe for consideration. *See* FED. R. CIV. P. 72(b)(2). I have reviewed the dual motions for summary judgment, Judge Crigler's R & R, Plaintiff's Objections, and the relevant portions of the record. For the reasons stated below, I will **OVERRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment, and **DISMSIS** this case from the active docket of the Court.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On November 10, 2008, Plaintiff Lloyd E. Sowers ("Plaintiff") filed an application for Social Security Disability benefits pursuant to Title II of the Social Security Act. *See* 42 U.S.C. §§ 401–433. (R. 138-39.) In his application, Plaintiff alleged that he was disabled as of August 2, 2008. (*See id.*) Plaintiff's claim was denied initially on April 7, 2009, and upon reconsideration on May 3, 2010. (*See* R. 174-84, 207-216.) On June 22, 2010, Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ"). (R. 91-92.) On December 6, 2010, an ALJ held an administrative hearing to determine whether Plaintiff was under a disability within the meaning of the Social Security Act. (R. 52-76.) Plaintiff and Dr. Andrew Beale, a vocational expert, appeared and testified. (*See id.*) Plaintiff was represented by counsel at the hearing.

On January 28, 2011, the ALJ submitted his decision including findings of fact and conclusions of law. (R. 11-23.) The ALJ applied the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since August 2, 2008, his alleged disability onset date. (R. 39.) He found that Plaintiff suffered from "left periscapular tendonitis and an ankle disorder – status post left ankle arthroscopy," which are severe impairments pursuant to 20 C.F.R. §§ 404.1520(c). (*Id.*) The ALJ found that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, subpart P, appendix 1. (R. 40.) In making this finding, the ALJ noted:

> Specific attention was paid to section 1.00 of the medical listings for musculoskeletal impairments. Although the claimant suffers from degenerative disc disease, left shoulder tendonitis, and an ankle impairment, the evidence of record does not establish ineffective ambulation or an inability to perform fine or gross movements effectively. . . . In the absence of major evidence of dysfunction of a joint, reconstructive surgery or surgical arthrodesis of a major weight[-]bearing joint, nerve root compression accompanied by sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis resulting in pseudoclaudication, amputation, non-union of a fracture, or soft tissue injury under continuing surgical management, no listing level of musculoskeletal impairment is found to exist.

(*Id.*) Based on the evidence, the ALJ determined that Plaintiff "has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." (*Id.*)

Of particular importance at this stage, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (R. 41.) Additionally, the ALJ concluded that "the degree of severity alleged lacks support and consistency with the other evidence of record." (R. 42.) The ALJ also afforded the opinions of Drs. Mahoney and Clements "little weight." (R. 43, 44.)

Plaintiff subsequently appealed the ALJ's decision to the Appeals Council. (*See* R. 33.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and on June 18 2012, adopted the ALJ's decision as the final decision of the Commissioner. (R. 1–5).

Plaintiff instituted the present civil action in this Court on August 2, 2012. (Comp. [ECF No. 3].) Thereafter, I referred this matter to Magistrate Judge Crigler for consideration of Plaintiff's and Commissioner's (Defendant's) dispositive motions. (Order, Jan. 7, 2013, [ECF No. 11].) On June 11, 2013, Judge Crigler issued his R & R in which he concluded that I should grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss this case. (R & R [ECF No. 18].)

On June 26, 2013, Plaintiff filed timely Objections to the R & R. (Pl.'s Obj. [ECF No. 19].) Although Plaintiff appears, based on the numbering of his paragraphs, to lodge six objections, closer inspection reveals that his statements only question three of Judge Crigler's conclusions in the R & R: first, whether Judge Crigler erred in failing to accept as accurate the testimony of Plaintiff's treating physicians when that testimony conflicted with other evidence in

the Record (*see id.* ¶¶ 1,2,3); second, whether there is substantial evidence for the ALJ's conclusion regarding Plaintiff's residual functional capacity determination (*see id.* ¶ 4); and finally, whether the ALJ erred in his determination of Plaintiff's diminished credibility (*see id.* ¶ 5.) The Commissioner did not file a response to Plaintiff's Objections.

## II. STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that the role of the ALJ, not the Vocational Examiner, is to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is

supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[1]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

### III. DISCUSSION

In his Objections to the R & R, Plaintiff reiterates some of the same arguments he made in support of his Motion for Summary Judgment. For example, in his Motion, Plaintiff alleged that "the ALJ should have given greater weight to the opinions of the plaintiff's treating physicians." (Pl.'s Br. in Supp. of Mot. for Summ. J. pg. 9 [ECF No. 15].) In his Objection to the R & R, Plaintiff contends that the Magistrate Judge "erroneously concludes that substantial evidence exists to support the ALJ's decision to not give much weight to the opinions of the plaintiff's treating physicians . . . ." (Pl.'s Obj. ¶ 2.) Although I consider such recycled arguments to be improper,[2] I will address each of Plaintiff's arguments in turn.

---

[1] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

[2] Mere repetition of those arguments made to and rejected by Magistrate Judge Crigler is generally not sufficient to state an Objection under Federal Rule of Civil Procedure 72. As has been stated before:

> The issues that Plaintiff raises in her general objection have already been addressed by Magistrate Judge Crigler when they were before him in Plaintiff's summary judgment brief. Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection "make[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

*Veney v. Astrue*, 539 F. Supp. 2d 841, 845–46 (W.D. Va. 2008) (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

A. <u>The ALJ and Judge Crigler did not err in failing to give controlling weight to Plaintiff's treating physicians</u>

In evaluating medical opinions, the ALJ should consider the following non-exclusive factors: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)). Courts "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (internal quotations omitted). Nevertheless, the treating physician's opinion is not entitled to this deference if it proves inconsistent with the objective evidence or other substantial evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)); 20 C.F.R. § 404.1527(d)(2)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996)). Accordingly, "[t]he ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Id.* (citing *Bentley v. Shalala*, 52 F.3d 784, 786 (8th 1995)).

A few points bear mention: first, a treating physician's opinion, although generally accorded deference, is far from sacrosanct. *See, e.g.*, *Halloran*, 362 F.3d at 32; *Craig*, 76 F.3d at 590. Second, it should come as no surprise to learn that treating physicians occasionally temper their opinions in terms more favorable to their patients. While this is discouraged, it is neither surprising nor, in most cases, contemptible. Yet the ALJ is bound by the facts, not by the most

plausible interpretation imposed by the treating physician on the facts. Finally, a conclusion that there is substantial evidence to support the ALJ's decision not to accord controlling weight to a treating physician's opinion does not mean the doctor was "wrong" or was "lying;" all it means, at this stage, is that the ALJ's conclusion was supported by "more than a scintilla" of evidence. *Laws*, 368 F.2d at 642. When there is such a conflict in the evidence, it is the ALJ's role to weigh the evidence, not mine. *See Walker,* 834 F.2d at 640.

In this case, there is substantial evidence to support the ALJ's decision to defer to the objective medical evidence as opposed to the treating physicians' subjective opinions regarding Plaintiff's ailments. Primarily, Dr. Mahoney's opinion consisted of a conclusion as to Plaintiff's limitations (favorable to Plaintiff) which failed to note the source of his limitations. (*See* R. 43.) In this respect, Dr. Mahoney's opinion is nothing more than an echoing of Plaintiff's complaints.[3] One may ultimately agree or disagree with Dr. Mahoney, but I cannot say that there is not substantial evidence for one to dispute Dr. Mahoney's methods, and thus his overall conclusions. Moreover, when coupled with the ALJ's determination regarding Plaintiff's credibility (*see infra* § III.C), there is substantial evidence for the ALJ's decision.

The same is true of Dr. Clements' opinions. In fact, Dr. Clements said that he was unable to determine if Plaintiff's complaints of pain were genuine. (*See* R. 397.) He also noted that, "[i]f the pain is as Patient [Plaintiff] describes, this would cause interruptions in concentration." (*Id.*) Surely, if Dr. Clements cannot determine if Plaintiff is actually suffering the pain Plaintiff describes, it follows that Dr. Clements' opinion regarding Plaintiff's limitations count little more than Plaintiff's self-professed limitations. This is confirmed by Dr. Clements' statement that Plaintiff "requires opportunities during an 8[-] hour day to lie down to rest . . . *[a]ccording to*

---

[3] For example, the only relevant assessments Dr. Mahoney made were that Plaintiff suffered from "shoulder pain" and "ankle pain." (*See* R. 364, 367.)

*patient*." (*Id.* (emphasis added).)  Like Dr. Mahoney's opinion, therefore, there is substantial evidence to support the ALJ's decision not to afford the opinions great weight.  The Objection is overruled.

> B. <u>Magistrate Judge Crigler did not err in concluding that Plaintiff's arm and shoulder impairments do not substantially interfere with Plaintiff's ability to perform sedentary work</u>

Plaintiff argues that, because the state agency physicians did not have the full record regarding Plaintiff's manipulative limitations, their opinions are not based on the entire evidence of the Record.  Accordingly, Magistrate Judge Crigler erred in reaching a conclusion consistent with their opinions.

While the argument Plaintiff puts forth is appealing, it ignores the fact that the Appeals Council and Magistrate Judge Crigler <u>did</u> have the entire record before them.[4]  The question, then, is not whether the state physicians failed to consider the whole record, but whether Judge Crigler failed to review the whole record.  There is no doubt that he did, and his conclusion is certainly supported by substantial evidence.  Imaging revealed a normal shoulder that was "negative for evidence of acute injury" and did not show any "significant degenerative changes" (R. 294); Plaintiff's pain was generally manageable with medication and his shoulder was without weakness (R. 304-05, 308, 310-11); and Dr. Fatade only diagnosed Plaintiff with "back pain"[5] in December 2008 (R. 305).  Moreover, when Plaintiff was instructed to return if his condition did not improve, there is no evidence that he did so.  (*See* R. 360, 367-68, 398-99.) While there is evidence to support Plaintiff's contentions, there is evidence to support the ALJ's

---

[4] Additionally, if there was new evidence that would have altered the state physicians' opinions, Plaintiff must show the so-called *Borders* factors.  *See Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).  *But see Wilkins v. Sec., Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991) (indicating that an amendment to 42 U.S.C. § 405(g) had superseded the *Borders* test).  He has not attempted to do so.

[5] To be fair, a month later, Dr. Fatade noted a reduced range of motion in Plaintiff's left shoulder accompanied by pain.  (R. 308.)

determination as well. When there is such a reasonable conflict in the evidence, the ALJ's position will be affirmed. The Objection is overruled.

      C. <u>Substantial evidence supports the ALJ's determination of Plaintiff's credibility</u>

"In reviewing for substantial evidence, [the Court] does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). If there is substantial evidence to support the ALJ's determination of Plaintiff's credibility, that decision will stand regardless of whether I would have reached the same conclusion.

While Plaintiff may have merely been mistaken when he misreported his employment history and said he stopped working in 2005 when he actually stopped in 2008 (*see, e.g.*, R. 39, 55), his differing answers regarding his level of pain represent substantial evidence for the ALJ's decision to disregard Plaintiff's subjective complaints. At his hearing, Plaintiff testified that, after his May 2010 surgery, he was in "real pain" in July. (*See* R. 59.) He expressly disavowed that it was "possible" the he "might have felt slightly better after the surgery." (R. 62.) According to his medical records, however, Plaintiff told Dr. Clements that he was "doing ver[y] well, with minimal pain," and "that his ankle feels a lot better than it did before the surgery" in July of 2010. (R. 356.) This blatant inconsistency is substantial evidence for the ALJ's decision.[6] While there may be a reasonable explanation for Plaintiff's differing reports to his doctor and the ALJ (although one is not offered), it is not my place to reweigh the evidence. The Objection is overruled.

---

[6] Moreover, Dr. Clements records suggest that even he was not entirely persuaded by Plaintiff's subjective complaints; he noted that he was "not able to determine" if Plaintiff's complaints of pain were genuine. (R. 397.)

## IV. CONCLUSION

The ALJ's decision is supported by substantial evidence and the Record is otherwise free from clear error. Therefore, I will **OVERRRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **DISMISS** this case from the active docket of this Court.

The clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 26th day of July, 2013.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE